IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SHERRIAN A. MOORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:06cv605-CSC |
| | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). The parties have consented to the United States

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).³

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction**. The plaintiff was 38 years old on the date of onset and 40 years old at the time of the ALJ's decision.⁴ (R. 18). Moore testified that she reached the eleventh

---

³*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

⁴ Although the plaintiff testified at the administrative hearing that she was 49, (R. 212), the record clearly demonstrates that she was born in March 1965. (R. 39, 43, 45).

grade and the ALJ found that she has a limited education. (R. 212, 18). The plaintiff's prior work experience includes work as a dietary aide, motel housekeeper, packer and inspector of glass products. (R. 18). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of degenerative disc disease of the lumbar spine and status post spinal fusion. (R. 15). The ALJ concluded that the plaintiff was unable to return to her past relevant work, but, using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework, and relying on the testimony of a vocational expert, concluded that there were significant number of jobs in the national economy that the plaintiff could perform. (R. 18-19). Consequently, the ALJ concluded that the plaintiff was not disabled. (R. 19)

**B. Plaintiff's Claims**. As stated by the plaintiff, she presents the following two issues for the Court's review:

1. Whether the Administrative Law Judge committed error by finding that the Plaintiff's testimony about her disabling pain and functional restrictions is disproportionate to the objective medical evidence.

2. Whether the Administrative Law Judge properly applied the three-part pain standard set forth in *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991),[5] also *Landry v. Heckler*, 782 F.2d 1551 (11th Cir. 1986). *See* Pl's Br. at 1-2.

---

[5] The court notes that the citation in the plaintiff's brief is incorrect. Consequently, the court has inserted the correct citation in the plaintiff's statement of the issues.

### IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983).

Although the plaintiff presents two separate claims, the court concludes that because the issues are so intertwined, they should be addressed together. "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Landry,* 782 F.2d at 1553; *see also Holt*, 921 F.2d at 1223. This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553. In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the

objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If there is no such support then the testimony must be accepted as true. *Hale*, 831 F.2d at 1012.

According to the plaintiff, the pain in her back is so intense she cannot work. (R. 223). As explained more fully below, the ALJ did not credit this testimony. The medical evidence establishes on October 2, 2003, the plaintiff presented to Dr. Timothy Holt complaining of back pain. (R. 141). Dr. Holt suspected that the plaintiff had "severe degenerative disc at the 5/1 level." (*Id.*) A MRI on October 9, 2003, revealed a "large extruded disc fragment, instability at the 5/1 level." (R. 140). X-rays also revealed "severe degeneration with complete collapse at L5-S1." (R. 145). On December 1, 2003, the plaintiff underwent the following procedures:

> Anterior lumbar interbody fusion, L5-S1, application of bone dowels x 2 at L5-S1, anterior iliac crest bone graft posterior non-segmental instrumentation L5-S1, posterior iliac fusion L5-S1, lumbar laminectomy with decompression, discactomy L5-S1.

(R. 142). Radiology reports indicated "severe narrowing of the L5-S1 disc space with some associated end plate reactive sclerosis and marginal spurring." (R. 162). The surgery was successful and Moore was discharged on December 3, 2003 with a brace. (R. 142).

On December 30, 2003, X-rays demonstrated that the "bone dowels [were] in good position. Everything is well aligned." (R. 140). Dr. Holt noted a concern about an avulsion "off the anterior superior iliac spine." (*Id.*) On January 30, 2004, Dr. Holt noted that although Moore had a limited range of motion, she "seems to be doing quite well." (R. 139). He prescribed physical therapy and a light brace. (*Id.*)

On February 4, 2004, Moore began physical therapy. (R. 88). During her initial consultation, she informed the therapist that "[s]he is not sure she is going back to work." (*Id.*). She ambulated with no assistive device and reported that she had been "doing some walking at Trenholm State but usually about 2 times around the track which is an estimated 1-2 miles she reports difficulty with her legs giving out after that. Since the surgery, she has been having less pain and less constant." (*Id.*). The therapist noted that the surgery "seems to have" been successful and her residual pain was greatly reduced. (R. 89). On February 9, 2004, Moore had some tenderness along her left hip. (R. 102). On February 16, 2004, she reported "no real pain through her low back," but she complained of pain in her left leg. (R. 99). On February 19, 2004, she reported "continued pain through her left low back as well as some pain radiating down through her left lower extremity." (R. 98). On February 23, 2004, she reported "some mild soreness, but overall . . . is doing some walking, about a mile or so." (R. 96). On February 26, 2004, Moore reported doing better with therapy. (R. 94). On February 27, 2004, she reported "pain is off and on especially on the left hip across the graft," but she was "doing well." (R. 93). On March 3, 2004, she reported "slight pain in low back region." (R. 91). Finally, on March 5, 2004, the plaintiff "report[ed] fatigue with

extensive exercise program but no complaints otherwise." (R. 90).

On March 12, 2004, Dr. Holt saw Moore for a follow-up and noted that x-rays

> look[ed] good. They show the rod and screw device is in good position. It looks like her fusion is incorporated. Everything seems to be doing reasonably well. She is doing better than she was preoperatively, but she is still having pain in her lower back. She has difficulty bending, and she also has difficulty lifting anything heavy.
>
> We have talked about her job, which requires her to bend and lift quite a bit of weight. At this time, I think she does have a disability rating of 10% total body. As for as restrictions go, I think she does need to limit her lifting to less than 15-20 pounds. She needs to avoid repetitive flexion extension. She needs to be able to sit, alternating between a sitting and standing position.

(R. 139).

On December 14, 2004, Dr. Holt removed Moore's hardware as it had become painful. (R. 170-80). The fusion was solid and there were no complications. (*Id.*) She was discharged with a prescription for Mepergan Fortis which is used to treat moderate to severe pain following surgery. (R. 180).

The plaintiff next saw Dr. Holt on January 28, 2005. (R. 138). At that time, Dr. Holt noted that "[e]verything seems to be doing pretty well." (*Id.*) Moore still complained about lower back pain but her range of motion was good. (*Id.*) Dr. Holt reiterated that her disability rating was 10% permanent disability. (*Id.*)

On April 24, 2005, Moore presented to the emergency room complaining of low back pain. (R. 181-85). According to the plaintiff, she hurt her back making the bed and lifting

the mattress. (R. 215). She was discharged with medication, heat and bed rest.[6] (R. 181-85).

On June 17, 2005, Dr. Holt wrote that the plaintiff

> . . . is status post hardware removal which was done about six months. I do not see any reason why she cannot return to the restrictions which she had given to her on 3-12-04, which would be limited lifting of less than 15-20 pounds and avoiding repetitive flexion ext. She needs to be able to sit, altering her position from a standing to a sitting position, as needed.

(R. 203).

On July 22, 2005, Moore presented to Dr. Holt complaining of tenderness. (R. 193). Her range of motion was limited and she had a positive straight leg raise. (*Id.*). Dr. Holt ordered an MRI. The MRI was performed on November 1, 2005 and revealed

> 1. Postoperative decompressive laminectomy changes with interbody fusion changes at L5-S1.
> 2. No enhancing scar tissue
> 3. Synovitis involving the facet joints at L4-5. No canal stenosis.

(R. 208). After reviewing the MRI, Dr. Holt concluded that conservative treatment was appropriate. (R. 207). During this examination, Moore's range of motion was good. (*Id.*)

At the administrative hearing, the plaintiff testified that on a daily basis, her pain level is an eight. (R. 217). She further testified that she tries to vacuum but when she begins to hurt, she sits down. (R. 219). She goes to church almost every week and she visits people, but she has no hobbies. (R. 220).

The ALJ discredited the plaintiff's testimony of disabling pain and functional

---

[6] Although the plaintiff testified at the administrative hearing that she continues to take Oxycontin that was prescribed during this emergency room visit, the medical records clearly demonstrate that she was prescribed 24 Tylox tablets with no refills authorized. (R. 185).

restrictions as being disproportionate to the objective medical evidence in the record.  (R. 15A).

> The medical record generated after back surgery strongly suggests that claimant's back condition has significantly improved.  Clinical findings have continued to show limited range of motion of the back but normal (i.e. 5/5) motor testing, intact sensory, no clonus, normal Babinski and negative Gaenslen and Fabere signs.  X-rays, taken in March 2004, have confirmed that the rod and screw device were in good position and that fusion had taken place.  I do note that the claimant has continued to complain of some back pain since her initial surgery.  In February and March 2004, she participated in physical therapy.  In December 2004, she underwent a common outpatient procedure to remove painful hardware from her back.  During a period, beginning January 2004 and ending June 2005 (the month of the disability hearing), she saw Dr. Holt on three occasions and made one visit to the emergency room for back pain.
>
> Contrary to her testimony of experiencing moderately severe (i.e. 8/10) pain every day, the medical record indicates that her pain has been no more than moderate in severity and intermittent in duration.  For example, on February 4, 2004, she reported to her physical therapist that her pain "comes and goes" and rated its intensity at "4-5" out of 10.  While undergoing therapy, she reported on February 16th having no real pain in her low back but continued to have some pain and numbness in her left leg.  Her physical therapist observed that she walked with a "slightly" antalgic gait.  On March 3rd, she reported having only "slight" pain in her lower back (See Exhibit 2F).  On April 24, 2005, the claimant complained of back pain at the emergency room (ER).  ER records rated her pain at the "moderate" level, and the ER doctor observed her to be in "mild" distress.  His clinical findings showed decreased range of motion of the back with muscle spasm but the remainder of his examination was unremarkable with negative straight leg raising, no motor or sensory deficits, normal reflexes, and non-tender extremities with full range of motion.  The ER doctor prescribed pain medication and recommended no work for two days (See Exhibit 8F).  The claimant testified that she is now taking Oxycodone.  Other than receiving Tylox[7] at the emergency room in April 2005 I do not find in the medical record where this has been prescribed on a regular

---

[7] Tylox is the brand name for generic ingredients of Acetaminophen + Oxycodone Hydrochloride. See *The Pill Book*, 10th Edition Revised (New York: Bantam Books, 2002).

basis. Dr. Holt has prescribed Ultracet, a non-narcotic pain reliever, or Lortab 2.5 mg., a narcotic and analgesic pain reliever. Lortab comes in different narcotic strengths. The one prescribed by Dr. Holt is the lowest strength available[8] (See Exhibit 6F, page 32). The claimant contends that she experiences significant drowsiness from her pain medications, but Dr. Anderson, who had an opportunity to review the treatment record, believed her testimony to be inconsistent with the treatment record. In reviewing the medical record, myself, I do not find any complaints of significant side affects from medications.

And lastly, I find that inconsistencies in the record tend to lessen claimant's credibility. Some of these inconsistencies have already been addressed. To give a couple more examples: (1) The claimant testified that she uses a cane when her pain is real bad. But, accordingly to her testimony, her pain is at a moderately severe (i.e. 8/10) level every day [She also testified that her pain level never exceeds this level.] but she had not used her cane since the week before the disability hearing. (2) The claimant testified that Ultracet makes her sleepy for only ten minutes but then stated that she needs to sleep for one or two hours because of its effects. (3) The claimant testified to having severely restricted activities of daily living and functional abilities. She sleeps half of the day and cannot sit or stand more than 30 minutes at a time. In a Report of Contact, dated March 9, 2004, she reported that her left leg constantly gave out on her and she needed someone with her in case she might fall. She also needed assistance dressing, was unable to turn over in bed or get out of bed without holding on to the mattress, and was unable to cook or do household chores. On the other hand – In the same Report of Contact, the claimant reported that immediately before her back surgery she could do all the above activities with pain and also attend basketball and football games (See Exhibit 3E). In February 2004, she reported to her physical therapist having less pain after her back surgery and was walking two times (estimated 1-2 miles around the track at Trenholm State (See Exhibit 2F).

(R. 16-18) (footnotes in original).

The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. The

---

[8] Lortab is prescribed in strengths of 2.5 mg., 5 mg., 7.5 mg., and 10 mg. See *The Pill Book*.

ALJ's reasons for discrediting the plaintiff's testimony of pain and disability were both clearly articulated and supported by substantial evidence. *Id.* Relying on the treatment records, objective evidence, and complaints to her treating physician, the ALJ concluded that the plaintiff was not credible and discounted her testimony. After a careful review of the record, the court concludes that the ALJ properly discounted the plaintiff's testimony and substantial evidence supports the ALJ's credibility determination. It is undisputed that the plaintiff suffers from pain. The ALJ considered that the plaintiff's underlying condition is capable of giving rise to some pain and other limitations, but he concluded that the plaintiff's underlying impairments are not so severe as to give rise to the disabling intractable pain as alleged by the plaintiff.

In her brief, the plaintiff argues that the ALJ's conclusions are not supported in the record and points to evidence in the record which she characterizes as supporting her position. First, much of that evidence is tautalogical because it is the plaintiff's own testimony about her pain. But aside from that, the plaintiff is correct that there is evidence in the record which can be understood as supporting her position. However, when confronted with that circumstance this court is not at liberty to parse the evidence in the way it deems appropriate. When there is substantial evidence supporting the ALJ's conclusions, as here, the court's inquiry is at an end, and the Commissioner's decision must be affirmed. To the extent that the plaintiff is arguing that the ALJ should have accepted her testimony regarding her pain, as the court has explained, the ALJ had good cause to discount her testimony. This court must accept the factual findings of the Commissioner if they are

supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

## V. Conclusion

The court has carefully and independently reviewed the record, and concludes that the decision of the Commissioner is supported by substantial evidence. A separate final judgment will be entered.

Done this 2nd day of March, 2007.

                                              /s/Charles S. Coody
                                      CHARLES S. COODY
                                      CHIEF UNITED STATES MAGISTRATE JUDGE